UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHELBY N. VERCHER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:18-cv-607-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Shelby N. Vercher ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No.10) is **GRANTED**, and the Commissioner's motion (ECF No. 12) is **DENIED**.

## BACKGROUND

On December 8, 2015, Plaintiff protectively filed her SSI application, alleging a disability beginning on April 1, 2013 (the disability onset date), based on bipolar disorder, a recent suicide attempt, OCD, PTSD, and ADHD. Transcript ("Tr.") 332. Plaintiff's claim was denied initially on March 28, 2016, and upon reconsideration on July 27, 2016 (Tr. 56-86, 91-104), after which she requested an administrative hearing.

Plaintiff's hearing was held before Administrative Law Judge David R. Gutierrez (the "ALJ") on February 9, 2017, in Houston, Texas.[1] Tr. 15-30. Plaintiff appeared and testified at the hearing and was represented by Luther Dulevitz, an attorney.[2] Tr. 15. Kay S. Gilreath, a vocational expert ("VE"), also appeared and testified at the hearing. *Id*. After the hearing, Plaintiff submitted additional medical records from Kingwood Medical Center, which the ALJ notes were received and admitted it into the record as Exhibit 14F (Tr. 728-70) and considered in making his decision. *Id*. The ALJ issued an unfavorable decision on April 28, 2017, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. Tr. 15-30. On March 28, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] It appears that Plaintiff moved from Texas to New York at some point after the ALJ decision and before the Appeals Council denial.
[2] The ALJ decision states that attorney Luther Dulevitz is associated with Victor Makris, an attorney who is Plaintiff's main representative. Tr. 15.

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his April 28, 2017 decision:[3]

1. The claimant has not engaged in substantial gainful activity since December 8, 2015, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: seizure disorder, bipolar disorder, schizoaffective disorder, and borderline intellectual functioning (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work[4] as defined in 20 CFR 416.967(b) except the claimant is limited to lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant is limited to stand and/or walk for six hours and sit for six hours in an eight-hour workday with normal breaks. The claimant is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to no climbing of ladders, ropes or scaffolds. The claimant is limited to no work around unprotected heights, open flames, or moving machinery. The claimant is limited to no driving jobs. The claimant is limited to simple tasks. The claimant is limited to occasional contact with coworkers and the public. The claimant is limited to no pace work, tandem work, or teamwork;

5. The claimant has no past relevant work (20 CFR 416.965);

---

[3] The Court observes that there is a duplicate number 4 in the ALJ's findings of fact, due to which the subsequent findings are mis-numbered. Tr. 27-19.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

6. The claimant was born on March 4, 1991, and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 8, 2015, the date the application was filed (20 CFR 416.920(g)).

Tr. at 17-29.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on December 8, 2015, Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id*. at 30.

## **ANALYSIS**

Plaintiff alleges two points of error. First, Plaintiff argues that because the ALJ gave "some" or "little" weight to all available medical opinions of record (Tr. 25-27), he essentially rejected all medical opinions, and the RFC was therefore not supported by substantial evidence. Second, Plaintiff argues the ALJ erred in his assessment of Plaintiff's activities of daily living. *See* ECF No. 10-1 at 8-13. For the reasons set forth below, the Court finds that because the record is incomplete with respect to Plaintiff's mental health treatment and prescribed medications, the ALJ erred in his fundamental duty to develop the record. As such, remand is warranted. However, the Court finds that the ALJ's exertional findings are correct. Since the Court is remanding the case, the Court declines to address Plaintiff's second point of error.

Plaintiff argues that the ALJ's assignment of little weight to all the evidence of record is problematic in that the ALJ found that Plaintiff had severe impairments of bipolar disorder,

schizoaffective disorder, and borderline intellectual functioning, but he assessed an RFC finding Plaintiff capable of working "without relying on any medical guidance." ECF No. 10-1 at 8. Plaintiff argues that although it is the province of the ALJ to make an RFC determination, he is not able to do so on the basis of bare medical evidence. *Id*. (citing *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). Here, Plaintiff argues that giving such medical opinions only little weight creates an evidentiary gap in the record warranting remand. *See* ECF No. 10-1 at 9; *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period").

Plaintiff first complains that the ALJ gave only "some weight" to the opinions of the following providers: (1) Laurence Ligon, M.D. ("Dr. Ligon"), a physician with the State agency; Colleen Ryan, M.D. ("Dr. Ryan"), another State agency physician; Mark Schade, Ph.D. ("Dr. Schade"), a State agency reviewing psychologist; and Sheri Tomak, Psy.D. ("Dr. Tomak"), a State agency psychologist. Said opinions were given at or near the time of Plaintiff's application. Plaintiff argues that this was proper since the opinions were made prior to two significant events—an automobile accident in the fall of 2016, and a suicide attempt in July 2016. Citing a number of recent district court cases, including *Judd v. Berryhill*, No. 17-CV-1188, 2018 WL 6321391, at *8 (W.D.N.Y. Dec. 4, 2018), Plaintiff contends that the RFC was made without medical evidence. *See* ECF No. 10-1 at 9. Plaintiff posits that the ALJ may not make a "common sense" RFC finding, especially where there are extensive mental limitations. *Id*. at 11 (citing *Lilley v. Berryhill*, No. 16-CV-6177L, 2018 WL 1870137, at *3 (W.D.N.Y. Apr. 19, 2018).

In the end analysis, Plaintiff argues that the ALJ should have further developed the record with additional medical evidence, whether through a consultative examination or medical expert testimony. *Id*. at 11-12 (citing *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *19 (W.D.N.Y. May 7, 2014) ("remand is appropriate to allow the ALJ to obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning [the plaintiff's] physical capabilities"). Plaintiff refers to records from three physicians which Plaintiff claims are mentioned but no treatment notes were in evidence. *See* ECF No. 10-1 at 12. Plaintiff alleges that although she reported her medications were prescribed by "Jorge A. Riachmon [sic],"[5] "there are no records from this source in evidence." *Id*. Plaintiff similarly alleges that "a summary letter from Dr. Sunkureddi[6] indicating two months of treatment for mood disorder and generalized anxiety" lacked any actual treatment records. *Id*. (citing Tr. 665). Finally, Plaintiff references Dr. Jia's[7] November 2016 note indicating that Plaintiff was treating with "Psychiatrist Dr. Taz," but there are likewise no records from this source in evidence. *Id*. (citing Tr. 723). Plaintiff argues that, given the evidence before him, the ALJ had the duty to obtain these records prior to issuing a decision. *See* ECF No. 10-1 at 13 (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Plaintiff further argues that the Commissioner has a duty to develop the record, even where a claimant is represented by counsel. *Id*. As Plaintiff notes, the responsibility of an ALJ to fully develop the record is "a bedrock principle of Social Security law." *Rodriguez ex rel. Silverio v. Barnhart*, 2003 WL 22709204 *3 (E.D.N.Y. 2003) (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 2003).

---

[5] Jorge Raichman., M.D. ("Dr. Raichman"). *See* Tr. 662.
[6] Krishna V.R. Sunkurcddi, M.D. ("Dr. Sunkureddi). *See* Tr. 665.
[7] Yuhang Jia, M.D. ("Dr. Jia"). *See* Tr. 723.

7

The Court disagrees with Plaintiff's assertion that notes from Dr. Raichman are missing. Dr. Raichman saw Plaintiff after her admission for a suicide attempt. Tr. 611-12. Dr. Sunkureddi submitted a statement dated November 17, 2016, stating that Plaintiff had been treating with him since September 8, 2016. Tr. 665. Dr. Sunkureddi diagnosed "Unspecified Mood Disorder" and "Generalized Anxiety Disorder." *Id*. Plaintiff also submitted a form for recent medical treatment which was received by SSA in September 2016. Tr. 326. The form lists four doctors Plaintiff saw on single visits: "Dr. Ansell" (for back), "Dr. Joi Parker," "Dr. I," and "Dr. Massoud Bina." *Id*. The form provides an address and/or phone number for each. *Id*. The form also lists medications and notes prescriptions from "Dr. Jorge A. Riachmon [sic]." Tr. 327. This information was provided several months prior to Plaintiff's administrative hearing before the ALJ. Nevertheless, Plaintiff's counsel attested to the fact that the record was complete. Tr. 38.

The Court first notes that there are few medical records in Plaintiff's file, and those that exist are primarily ER visits. In May 2016, Plaintiff presented to Kingwood Medical Center ("Kingwood") ER complaining of a headache. Tr. 760. Her CT scan was normal. Tr. 763. Her urinalysis showed cannabis use. Tr. 762. Her affect, mood, and thought content were all noted as normal. Tr. 767. Her headache issues resolved, and she was discharged. Tr. 768. In July 2016, she presented to Kingwood ER with a chief complaint of "Drug overdose/Suicidal [sic] attempt." Tr. 749. The psychiatric evaluation noted "Not homicidal, No hallucinations" and "Poor judgement." Tr. 752. Her urine screen was positive for benzodiazepines and cannabinoids. Tr. 756. The remaining blood chemistry and urine analysis were essentially unremarkable. Tr. 756-57.

In October 2016, Plaintiff again presented to Kingwood ER complaining of "right lower back pain, leg and upper arm pain, weakness, and numbness." Tr. 734. During the visit, she reported she had been seen at Ben Taub Medical Center ER two weeks prior for injuries related to

8

a motor vehicle accident, but all imaging studies were negative. Tr. 734, 737. The notes reflect that Plaintiff reported moderate severity and inability to move her right leg and arm, even though she walked into the ER "on her own accord." Tr. 737. She had some right knee swelling. *Id*. Plaintiff's psychiatric assessment noted normal mood, affect, judgment/insight and thought content. Tr. 739. Scans and x-rays of the knee and spine were unremarkable. Tr. 740.

In November 2016, approximately two weeks after the auto accident, Plaintiff saw Dr. Jia at Memorial Hermann Medical Group for knee pain. Tr. 723. The treatment note indicated swelling and stated that Plaintiff "[a]mbulates with a cane and knee immobilizer." Tr. 723. Dr. Jia reviewed the knee x-rays taken at Kingwood ER two weeks earlier which demonstrated no acute fracture or misalignment, no significant effusion, and no incidental soft tissue findings. Tr. 724, 674. In December 2016, she again presented to Kingwood ER complaining of jaw swelling and mouth and dental pain. Tr. 728. She was directed to seek further outpatient evaluation with a primary care physician and was given multiple resources for low-cost dental clinics. Tr. 732. Earlier in 2014, she presented to the ER at St. Joseph Medical Center ("St. Joseph") for abdominal pain. The psychiatric evaluation noted negative for depression, anxiety, suicidal ideation, homicidal ideation, and hallucinations. Tr. 399, 458.

In October 2015, Plaintiff was admitted to West Oaks Hospital ("West Oaks") for recurring depression and anxiety. Tr. 404. Noted stressors were the recent death of her grandmother and the removal of her children by CPS. Tr. 405. It was also noted that she "refuses meds in general." Tr. 414. An MRI completed in October 2015 noted no significant lumbar abnormalities but did note gall bladder disease. Tr. 431.

In February 2016, Plaintiff was seen by Mark Lehman, Ph.D. ("Dr. Lehman"), who diagnosed her with bipolar disorder. Tr. 455. He noted that Plaintiff's judgment and insight

9

appeared limited, and she was moderately depressed. *Id*. He also noted that her symptoms were likely to improve with psychiatric treatment. *Id*. He did note that her symptoms were of sufficient severity to impact her ability to complete routine tasks. Tr. 455. Yet he also noted that her speech was clear; her thought processes essentially normal; and she could think abstractly. Tr. 454. There was no evidence of delusions or paranoia, and her affect was normal. *Id*.

The Commissioner argues that there was no medical evidence of record stating that Plaintiff could not work during questioned period. In essence, the Commissioner argues that Plaintiff simply failed to meet her burden to demonstrate some disability at the first four steps of consideration. *See* ECF No. 12-1 at 21 (citing *Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014)). "Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . [she] must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Hanson v. Comm'r of Soc. Sec.*, No. 15 CV 0150, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 15 CV 150, 2016 WL 3951150 (N.D.N.Y. July 20, 2016).

The Commissioner also points out that the ALJ gave great weight to Dr. Ligon's opinion and some weight to at least a portion of the opinions of Drs. Ryan, Schade, and Tomak. *See* ECF No. 12-1 at 21-22 (citing Tr. 26). The Commissioner contends that the RFC is based on the record as a whole and not just the medical opinion evidence. *Id*. (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The Commissioner further argues that no new consultative exams are mandated simply because some weight or limited weight was given to the opinion evidence of record. *Id*. at 22 (citing *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 913 (W.D.N.Y. 2018)).

As to Plaintiff's back complaints, the Commissioner argues that the ALJ properly gave weight to Dr. Ligon's findings, since except for a brief period after her auto accident, all exams and findings related to Plaintiff's back condition were essentially normal. Tr. 355-56, 367-68, 399, 429, 432, 444-45, 710-12, 687-88, 674-76. Furthermore, since the auto accident occurred six months before the hearing, the Commissioner argues there is nothing in the medical evidence to demonstrate that any impairment would meet the durational requirement. *See* ECF No. 12-1 at 24.

With respect to Plaintiff's mental complaints, the Commissioner argues that prior to her application, medical reports were essentially normal. *See* ECF No. 12-1 at 25. For example, in March 2014, she was fully oriented, memory was intact, and had no abnormal movements. Tr. 356. In April 2014, she demonstrated normal behavior, mood, and affect. Tr. 399. The Commissioner also points out that although Plaintiff was an inpatient at West Oaks for a few days in 2015, that stay was in the aftermath of two situational stressors, including the recent death of her grandmother and her children being taken by CPS. *See* ECF No. 12-1 at 25. Moreover, as the Commissioner notes, Plaintiff was non-compliant with medication (Tr. 405, 411), and she refused medications in general saying "I'm against it all" (Tr. 414).

As noted above, Plaintiff was seen at St. Joseph in 2014 for abdominal pain. Tr. 399. Her psych notation was alert, with orientation to person, place and time, and her behavior, mood, and affect were within normal limits. Tr. 399. According to the record, Plaintiff "left against medical advice." Tr. 398. The record also notes: "Impression: Threatened abortion" (miscarriage). Tr. 398. It appears Plaintiff was seen two months later for the same problem at Memorial Hermann. Her mood and affect were noted as normal. Tr 590.

With respect to Plaintiff's inpatient admission at West Oaks in August 2015, the treatment notes indicate worsening depression and crying spells, as well as the "situational stressors" noted

11

above (i.e., the death of her grandmother and her children being taken by CPS). Tr. 405. Dr. Lehman saw Plaintiff at the Marathon Psychology Group in February 2016. Tr 451-55. He observed that her thought processes were essentially normal; she could think abstractly; there was no evidence of delusions or paranoia; and perceptual abnormalities were limited to periodically hearing and seeing her deceased mother. Tr. 454. Dr. Lehman noted her "affect was appropriate; her mood normal, although slightly elevated;" her "[s]ensorium was clear;" and her "[j]udgment and insight appeared limited." Tr. 454-55. He also stated her "symptoms would improve with psychiatric treatment." Tr. 455.

According to a July 2016 psychiatric assessment at West Oaks, Plaintiff "overdosed" on Dilantin and Robitussin cough syrup. Tr. 639. However, she stated did not want to kill herself; rather, "she was in an abusive relationship" and "came in to get help and for rehabilitation." Tr. 639. The psychiatrist daily progress notes on August 2, 2016 indicate that Plaintiff's mood was "stable, not depressed." Tr. 657. However, on August 3, 2016, her mood was noted as "labile, volatile but not aggressive." *Id*. On July 29, 2016, her date of admission to West Oaks, Dr. Raichman noted that Plaintiff had a history of multiple psychiatric hospitalization associated with affective instability, suicidality, and substance abuse. Tr. 662. The note reflects she has a history of angry outbursts, throwing items, and having poor impulse control. *Id*.

The Commissioner notes that two state psychologists, Dr. Schade and Dr. Tomak, opined that Plaintiff would be able to carry out simple instructions, make decisions, maintain attention and concentration for extended periods, interact adequately with co-workers and supervisors and respond to work changes. *See* ECF No. 12-1 at 26 (citing Tr. 66, 82-83). In his opinion, the ALJ specifically noted that Dr. Lehman and Dr. Sunkureddi did not provide any functional limitations based on Plaintiff's mental health impairments. Tr. 24-25. As far as remembering and carrying out

detailed instructions, in March 2016, Dr. Schade opined that Plaintiff would be markedly limited but not significantly limited in understanding and remembering short and simple instructions. Tr. 64-65. He also found she would be moderately limited in completing a normal workday and work week without interruptions due to her psychological symptoms. *Id*. He found she had social interaction limitations and would be moderately limited in interacting with the general public. *Id*. On reconsideration. Dr. Tomak also reviewed Plaintiff's file and her analysis is more positive on the whole as to Plaintiff's ability to maintain employment. Tr. 82. The ALJ explained he gave "some weight" to the opinions of Dr. Tomak and Dr. Schade because "more recent medical evidence received at the hearing level supports more restrictive limitations regarding [Plaintiff's] interactions with others in light of her recent suicide attempt on July 29, 2016." Tr. 26.

Based on the foregoing, the Court finds that remand is necessary. Although the ALJ notes that Dr Lehman and Dr Sunkureddi examined Plaintiff, he notes that neither provided functional limitations. Yet, there is no indication that the ALJ tried to contact these providers. Likewise, he discounts weight to the state psychologists' opinions in that they did not examine the Plaintiff, and for the fact that their opinions were prior to the latest of Plaintiff's multiple hospitalizations for mental problems. It appears that Plaintiff was treating with Dr. Sunkureddi after her latest hospitalization. Therefore, the ALJ should fully develop the record as to Plaintiff's mental impairments by obtaining all of Dr. Sunkureddi's records, as well as have Plaintiff submit to an independent mental health examination with the purpose of arriving at an appropriate RFC, if warranted by any additional findings.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and this matter

is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

   **IT IS SO ORDERED**.

/s/ Don D. Bush
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE